**SECURITIES AND EXCHANGE COMMISSION, Appellee,**

v.

**GEYSER MINERALS CORPORATION et al., Appellants.**

**No. 71–1256.**

United States Court of Appeals, Tenth Circuit.

Dec. 10, 1971.

Duncan J. Cameron, Denver, Colo., for appellant C. George Swallow.

Walter P. North, Associate Gen. Counsel, S. E. C., Donald J. Stocking, Robert H. Davenport and Douglas J. Reich, Denver, Colo., for appellee S. E. C.

Before SETH, HAMLEY,* and McWILLIAMS, Circuit Judges.

HAMLEY, Circuit Judge.

This is an injunction suit instituted by the Securities and Exchange Commission (Commission) pursuant to section 20(b) of the Securities Act of 1933, as amended (15 U.S.C. § 77t(b)), and section 21 (e) of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78u(e)). The Commission sought to enjoin the defendants, Geyser Minerals Corporation (Geyser), Mineral Aggregates Corporation (Aggregates), and C. George Swallow, from engaging in acts, practices and a course of conduct alleged to constitute violations of the statutes and rule cited in the margin.[1]

The Commission charged, in count one of the complaint, that, since on or about September 1956, Geyser, Aggregates and Swallow have been utilizing the means of interstate transportation and communication to offer for sale, and to sell and deliver, their own securities, while no registration statement covering such securities was in effect or filed. In count two, the Commission charged that, since on or about September 1956, the three defendants, singly and in concert, in the offer and sale of their own securities, and by use of interstate transportation and communication, have been engaging in a wide range of practices and conduct which is unlawful under section 17(a)

* Of the Ninth Circuit, sitting by designation.

1. Sections 5(a) and (c) of the Securities Act of 1933, as amended (15 U.S.C. § 77e(a) and (c)); section 17(a) of the

Securities Act of 1933, as amended (15 U.S.C. § 77q(a)); and section 10(b) and Rule 10b–5 thereunder of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78j(b) and 17 CFR § 240.-10b–5, respectively).

of the Securities Act of 1933, as amended (15 U.S.C. § 77q(a)).[2]

In count three, the Commission charged that, since on or about September 1956, the three defendants, in connection with the sale of their own securities, and by use of interstate transportation and communication, have been using, and continue to use manipulative and deceptive devices and contrivances in contravention of the Commission's Rule 10b–5 (17 CFR § 240.10b–5), prescribed for the protection of investors pursuant to section 10(b) of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78j(b)).[3]

Defendants' joint answer is primarily a general denial of the critical allegations of the complaint. Pursuant to Rule 56, F.R.Civ.P., the Commission filed a motion for summary judgment enjoining defendants as prayed for in the complaint. In support of this motion the Commission referred to affidavits, written records and reports on file in the case and the Commission's memorandum in support of a preliminary injunction as establishing that there were no genuine issues of material fact and that the Commission was entitled to judgment as a matter of law.

The motion was set for argument on January 29, 1971. On that day defendant Swallow filed an affidavit in opposition thereto. After the argument, the district court found that there was no genuine issue of material fact as to count one (registration requirements), and granted a summary judgment of permanent injunction as to that count. This judgment was entered on February 1, 1971.

At the January 29, 1971 hearing the district court also requested the parties to submit memoranda with regard to the motion for summary judgment on counts two and three (anti-fraud provisions). These memoranda were filed and, on March 23, 1971, the district court entered summary judgment of permanent injunction on counts two and three.

All three defendants appealed from the judgment of March 23, 1971. Defendants Geyser and Aggregates, however, have made no appearance and filed no briefs in this court. While the Commission has not moved for dismissal of their appeals because of such failure (see Rule 31(c) F.R.App.P.), we will assume that Geyser and Aggregates have abandoned their appeals, and those appeals should accordingly be dismissed.

Defendant Swallow has advised the court that he does not, on this appeal, challenge the summary judgment entered on count one. As to the summary judgment for the Commission on counts two and three, Swallow first contends that a genuine issue of material fact remains to be decided, thereby precluding entry of a summary judgment. See Rule 56 (c), F.R.Civ.P.

Swallow advances several arguments in support of this general contention. The first has reference to the allegations in count two, paragraph 10(a) of the complaint. It is there alleged that defendants have been and now are employing a device, scheme and artifice to defraud. Swallow asserts that a genuine issue of material fact remains to be determined as to this allegation because it "is apparent from Plaintiff's argument and from Plaintiff's affidavits and ex-

---

2. The list of practices and conduct referred to in count two is too extensive to set out herein. However, it includes a detailed description of means employed to obtain money and property by means of untrue statements of material facts and omissions to state material facts. It also includes a detailed specification of means allegedly employed by defendants to induce purchasers and prospective purchasers to invest and reinvest in defendants' own securities, and to lull investors into a false sense of security regarding the safety of their investments.

3. The practices and conduct referred to in count three include employment of a device, scheme and artifice to defraud, making of untrue statements of material facts, omitting to state material facts, and engaging in acts which operate as a fraud and deceit upon purchasers and sellers of defendants' own securities, as more specifically alleged in count two.

hibits" that no attempt is made to show any particular device, scheme, and artifice to defraud in which Swallow was allegedly engaged.

According to Swallow, it was thus left to the imagination of the court as to what method, scheme or device was used by Swallow and those with whom he may have been working in order to effect the fraudulent practices alleged in the complaint. He adds that summary judgment procedure does not require him to refute, by affidavit, evidence which should have been supplied by the Commission.

Swallow's assertions are erroneous. His alleged scheme was described in detail in the Commission's complaint, its memorandum to the district court, and its argument before the court at the January 29, 1971 hearing. The scheme consisted of defendants' practice and conduct in making allegedly untrue statements and omission to make material statements, in engaging in transactions which operated as a fraud and deceit upon purchasers and prospective purchasers of securities, in the organization of Geyser, Aggregates and other corporations, in solicitation of investments in the securities of defendants, in opening and maintenance of bank accounts and transfer of money between bank accounts, and in many other practices, all described at length in the materials referred to above.

Swallow next points to the fact that, by his affidavit, he had denied the allegations in certain affidavits filed by the Commission to the effect that he had made certain oral representations.

While the affidavits referred to by Swallow pertain in part to certain oral representations assertedly made by Swallow, the Commission ultimately did not seek a summary judgment upon the basis of such oral representations. As made clear in the Commission's supplemental memorandum filed in the district court, the record contains a wealth of documents emanating from Swallow and others showing that Swallow utilized written and printed means of engaging in the practices charged in counts two and three. In his counter-affidavit, Swallow did not deny the authenticity of, his authorship of, or his signature on the numerous documents attached as exhibits to the investor affidavits discussed in Swallow's affidavit.[4] He only denied having made certain oral representations referred to in the affidavits.

In his affidavit, Swallow did deny that he offered or sold securities to the individuals enumerated in his affidavit, and alleged that if such securities were sold, they were sold by another. However, with one exception, Swallow did not deny that he obtained money from such individuals or that he signed, issued and mailed his notes, and the notes and certificates for the capital stock of Geyser and Aggregates, to such investors. These notes and certificates are attached to the investors' affidavits. Nor did Swallow deny that the means and instruments of interstate transportation and of the mails were used in connection with these transactions. In addition, neither Swallow nor the other defendants deny, except in their unverified answer, that they omitted to state material facts as alleged in detail in the complaint, or that the omitted facts are true.

Assuming, then, that Swallow's counter affidavit is sufficient to raise factual issues concerning the oral representations to which the affidavit is directed, we still find that the remaining uncontradicted allegations and supporting materials of the Commission are sufficient to sustain the injunction as a matter of law under Rule 56(c), F.R.Civ.P.

Swallow additionally questions the grant of summary judgment because the

4. These documents generally consist of letters from Swallow to the individuals involved, copies of letters from Swallow to other individuals, maps of certain mining claims in which defendants purportedly held an interest, results of tests involving "Mineralag," notes of Geyser, Aggregate and Swallow, certificates for capital stock of Geyser and Aggregates, and similar documents and literature.

district court did not indicate, in the summary judgment or otherwise, that it was not relying upon the oral representations referred to in the investors' affidavits, but only upon the documentary evidence. Under the circumstances, however, this does not undermine the validity of the judgment. The district court, at the January 29, 1971 hearing, requested the Commission to enumerate by memorandum the documentary evidence upon which the Commission relied in moving for summary judgment. This the Commission did, and in its supplemental memorandum the Commission also advised the court that it was not relying upon Swallow's alleged oral representations. In our view, it may be reasonably inferred therefrom that the summary judgment for the Commission on counts two and three is not grounded upon the oral representations.

Swallow's final argument pertaining to the existence of genuine issues of material fact is that, since his counter-affidavit raised evidentiary issues as to the controverted oral representations, he was entitled to a full trial to determine those issues. We disagree.

■ The fact that evidentiary issues are raised by the affidavits does not necessarily mean those issues are material to the decision of the controversy. As pointed out above, we have concluded that the documentary materials submitted by the Commission are sufficient to sustain the judgment as a matter of law, even if the alleged oral representations which Swallow denies are ignored. We therefore hold that the evidentiary issues raised do not, under Rule 56(c), F.R.Civ. P., constitute genuine issues of material fact such as would prevent entry of a summary judgment.

Apart from his arguments that there were one or more genuine issues of material fact, Swallow contends that, by reason of the complexity of the action and the presence in the record of voluminous affidavits and documents, the case does not lend itself to disposition by summary judgment. Swallow refers to Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). The Supreme Court there observed that,

"summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot."

Swallow also calls attention to the view, stated in 6 Moore's Federal Practice (2d Ed.) ¶ 56.17[27], page 2554, to the effect that summary judgment "is apt to be inappropriate" in an action based on a complex scheme of fraud where the court has been asked to decide the motion on lengthy affidavits and documents and voluminous depositions.

[2] In view of the fact that Swallow did not attempt to obtain the affidavits or depositions of others which might raise a genuine issue of material fact concerning his documented practices, he is in a poor position to resist the summary judgment on the ground that the Commission's case is thorough and complete. It may also be noted that while the record in this case is voluminous, most of the documents comprising the record were authored by, or generated by, Swallow.[5]

■ The *Poller* case, cited by Swallow, involved complex antitrust litigation where motive and intent play leading roles. Motive and intent, however, are not material in determining, in a civil injunctive suit, whether the defendants have violated the anti-fraud provisions of the 1933 Act and the 1934 Act. Securities and Exchange Commission v. Van Horn, 371 F.2d 181, 186 (7th Cir. 1966). In the case before us the crux of

---

5. In some respects, the record is not as voluminous as in the typical summary judgment case. The record contains no depositions or answers to interrogatories, or any other form of discovery, all of which are acceptable under the summary judgment rule. *See* Rule 56(e), F.R.Civ.P.

the alleged violations is to be found in the documents comprising the record. The state of mind of the violators is not germane. Moreover, even in antitrust litigation, if the pertinent area of law is well developed and the case turns on documentary evidence, disposition by summary judgment may be appropriate. *See* White Motor Co. v. United States, 372 U.S. 253, 259, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963).

 It is true, as pointed out in Associated Press v. United States, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2d 2013 (1945), that Rule 56 "should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them." [6] With this caution in mind, we nevertheless conclude that, under the circumstances described above, this is an appropriate case for disposition by summary judgment.

The appeals of Geyser and Aggregates are dismissed. On Swallow's appeal, the judgment is affirmed.

6. In the *Associated Press* case, the Supreme Court affirmed a summary judgment for the Government in an antitrust action where the documentary proof clearly established as a matter of law that the defendant was violating the antitrust law.