United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 25, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-41238
Summary Calendar

THOMAS F SNODDY

Plaintiff - Appellant

v.

CITY OF NACOGDOCHES

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
No. 9:00-CV-12

Before KING, Chief Judge, and DAVIS and BARKSDALE, Circuit
Judges.

PER CURIAM:[*]

Plaintiff-Appellant Thomas F. Snoddy, a former police

officer for Defendant-Appellee the City of Nacogdoches, brought a

Title VII lawsuit against the City alleging that he was denied a

promotion, demoted, harassed, and constructively discharged both

on account of his race and in retaliation for his past complaints

of discrimination.  Snoddy appeals from the district court's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

grant of the City's motion for summary judgment on each of these claims.  For the following reasons, we AFFIRM.

## I. BACKGROUND

Snoddy, an African-American, was employed by the City as a police officer from 1993 until he resigned in April 1999.  In early 1994, according to Snoddy, he began reporting to his superiors various incidents of racial discrimination within the police department.  Snoddy alleges that his complaints did nothing to end the discrimination and instead caused a backlash as his supervisors within the department subjected him to "trumped-up" disciplinary actions and unfair performance evaluations, denied him a promotion, and removed him from the department's Field Officer Training ("FTO") program.  Snoddy further claims that he felt compelled to resign as a result of this series of discriminatory incidents.

In January 2000, Snoddy brought suit against the City alleging employment discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., based on his non-promotion, demotion, harassment, and constructive discharge claims.[1]  In May 2003, Snoddy noticed a deposition under Rule 30(b)(6), requiring the City to provide a witness with information about the police

---

[1]  According to the district court, Snoddy also brought claims under 42 U.S.C. § 1983, alleging that the City had retaliated against him in violation of his First Amendment rights.  But because Snoddy does not reassert these claims on appeal, we will not address them.

department's promotion practices during Snoddy's tenure as a police officer.  The City filed a motion to quash this deposition and subsequently filed a motion for summary judgment.  The district court granted both motions and entered a final order dismissing Snoddy's claims with prejudice.  Snoddy now appeals the district court's resolution of both motions.

## II. DISCUSSION

A.   Quashing the Deposition

Snoddy first asserts that the district court erred in granting the City's motion to quash his Rule 30(b)(6) deposition. The district court found that the deposition was "unreasonably cumulative and duplicative" since it believed that Snoddy had already obtained the information he was seeking by deposing both Elizabeth Sanchez and Police Chief William Lujan.[2]  In addition, the district court found that Snoddy had more than ample time, in the years that the case was pending, to develop the facts of his case.  It therefore quashed the deposition under Federal Rule of Civil Procedure 26(b)(2).

"We review a district court's decision denying discovery, including quashing deposition subpoenas, for abuse of discretion."  Theriot v. Parish of Jefferson, 185 F.3d 477, 491

---

[2]    The district court also observed that these witnesses were provided by the City under Rule 30(b)(6).  In fact, both before the district court and this court the City claims that, had it been required to cooperate with this third deposition, it would have considered Chief Lujan the appropriate witness to testify regarding the police department's promotion policies.

(5th Cir. 1999).  Snoddy argues that the deposition should not have been quashed because he did not obtain the information he was seeking--the identity of the official responsible for the promotion decision and the educational and experiential qualifications of the white candidate who was selected--in either of the previous depositions.  Snoddy also claims that the district court should have granted his request for a continuance, under Rule 56(f), which would have allowed him to conduct the deposition before the court ruled on the City's pending summary-judgment motion.  We disagree.  The Federal Rules expressly state that a district court may limit a party's discovery if that party "has had ample opportunity . . . to obtain the information sought."  FED. R. CIV. P. 26(b)(2)(ii).  Furthermore, a party who "has not diligently pursued discovery" is not entitled to a continuance under Rule 56(f).  See, e.g., Beattie v. Madison County Sch. Dist., 254 F.3d 595, 606 (5th Cir. 2001).  Thus, the district court did not abuse its discretion in quashing the deposition and ruling on the City's motion for summary judgment without granting a continuance.  Cf. Walls v. General Motors, Inc., 906 F.2d 143, 147 (5th Cir. 1990) ("[The plaintiff] had ample time and sufficient opportunities to conduct the discovery procedures which he complains were denied him.  He cannot now lay his failure to conduct discovery at the feet of the district court.").

B.    Summary Judgment

Snoddy also attacks the district court's grant of summary judgment to the City on his discrimination and retaliation claims.  We review a district court's grant of summary judgment de novo, applying the same standard as the district court.  Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001).  Summary judgment is proper when the record, viewed in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); see also Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2001).  Moreover, "[t]he moving party is entitled to a judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

*1. Non-Promotion*

Before the district court, Snoddy alleged that the City did not promote him to a detective position in the fall of 1997--choosing instead to promote Greg Johnson, a white male--both on account of Snoddy's race and in retaliation for his previous complaints of racial prejudice within the police department.  To prove intentional discrimination under the now-familiar McDonnell Douglas burden-shifting framework, Snoddy was first required to establish a prima facie case by a preponderance

of the evidence.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  It is undisputed that Snoddy met this burden: (1) he is African-American, (2) he was qualified for the position, (3) he was not selected, and (4) the position was filled by a white applicant.  Cf. Blow, 236 F.3d at 296 (discussing the elements of a prima facie case).  Snoddy's prima facie case created a presumption of discrimination, shifting to the City the burden of producing a legitimate, nondiscriminatory reason for not promoting Snoddy.  Id. at 296-97.  The district court found that the City fulfilled its burden by showing that it selected Greg Johnson because he outscored Snoddy on all three of the relevant criteria--the performance review, the interview, and the number of years of service in the department.

Thus, to overcome the City's motion for summary judgment, Snoddy bore the burden of providing sufficient evidence from which a reasonable jury could conclude that the City's reason was pretextual.  Price v. Fed. Express Corp., 283 F.3d 715, 720, 723 (5th Cir. 2002).  Snoddy could have satisfied this burden by demonstrating that he was "clearly better qualified" for the detective position than the employee selected by the City.  See id. at 722.  Nevertheless, we have cautioned that, "unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face," we will not second-guess an employer's promotion decisions.  Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993).  Snoddy believes that his two college

degrees in criminal justice, compared to Johnson's high school education, demonstrate his superior qualifications. There is no evidence that a college degree was required for the detective position, however. Thus, in light of Johnson's higher scores in each of the selection criteria, Snoddy has not demonstrated that he was clearly more qualified for the detective position. See Manning v. Chevron Chem. Co., 332 F.3d 874, 882 (5th Cir. 2003). Snoddy also attempts to prove pretext by pointing out that most of the City's selection criterial were inherently subjective. But this fact alone does not create an inference that the City's proffered reasons for choosing Johnson were pretextual. See id. Accordingly, we affirm the district court's grant of summary judgment on Snoddy's discriminatory non-promotion claim.

Snoddy also alleged that the City chose not to promote him in retaliation for voicing his complaints of racial discrimination within the department. To establish a prima facie case of retaliation under Title VII, Snoddy was required to demonstrate: "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." Fierros, 274 F.3d at 191 (internal quotation marks omitted). The district court held that Snoddy did not satisfy the third prong of this test because he proffered no evidence––other than his own subjective beliefs––that retaliation played a role in the City's promotion

decision. Critically, the court noted that Snoddy did not allege or prove that the officials responsible for choosing among the candidates for the detective position were aware of his previous complaints of race discrimination. Notwithstanding Snoddy's other arguments to the contrary, we affirm the district court's grant of summary judgment on this basis. Cf. Manning, 332 F.3d at 883-84 (affirming the grant of summary judgment to an employer on a retaliation claim because the employee did not prove that the individuals who denied his transfer request knew he had engaged in a protected activity).

*2. Demotion*

In his complaint, Snoddy also alleged that the City removed his duties as an FTO in the spring of 1998 both because of his race and in retaliation for his past complaints of race discrimination. The district court held that Snoddy had not satisfied a prima facie case of discrimination or of retaliation under Title VII because withdrawing Snoddy from the FTO program was neither a demotion nor any other type of adverse employment action. Specifically, the district court noted that while Snoddy was no longer required to perform additional training duties as a result of the department's decision, his primary job title, pay, hours, and benefits remained the same.

Snoddy does not attack the legal basis of these conclusions on appeal. Instead, he contends that the district court erred by not noticing the City's concession, in its motion for summary

judgment, that removing Snoddy from the FTO program was the equivalent of demoting him. Our review of the City's motion, however, did not reveal any such concession.[3] We therefore uphold the district court's grant of summary judgment on Snoddy's demotion claims.

*3. Harassment*

Snoddy presents two arguments against the district court's grant of the City's motion for summary judgment on his claim of racial harassment. First, Snoddy points out "that a district court may not grant summary judgment <u>sua sponte</u> on grounds not requested by the moving party." <u>John Deere Co. v. Am. Nat'l Bank, Stafford</u>, 809 F.2d 1190, 1192 (5th Cir. 1987). While this is a correct statement of law, the City explicitly challenged the validity of Snoddy's harassment claim in its motion for summary judgment.[4] Thus, <u>John Deere</u> does not apply to the case at bar.

Second, Snoddy asserts that the district court erred in

_____

[3] Snoddy relies on the following sentence in the City's motion: "The City asserts that the removal of [Snoddy] from his FTO duties was not a promotion/demotion decision, but is confined, for summary judgment purposes, to [Snoddy's] pleadings in which he asserts that this was a demotion." In our view, the latter half of this statement merely explains that the City chose to address Snoddy's removal from the FTO program as a demotion claim--not as a second non-promotion claim. This interpretation comports with the first half of the sentence, which more clearly states that the City does <u>not</u> agree that Snoddy was demoted.

[4] In fact, the City's motion discusses the legal standards for proving harassment, defends the department's treatment of Snoddy, and then concludes: "Since any alleged harassment conjured up from the evidence . . . cannot meet the stringent requirements of a hostile working environment claim, <u>this claim should fail as a matter of law and summary judgment is appropriate</u>" (emphasis added).

holding that there was insufficient evidence for a reasonable jury to conclude that he was racially harassed by his supervisors in the police department. To prevail on his claim of racial harassment, Snoddy was required to prove that: "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; [and] (4) the harassment complained of affected a term[,] condition or privilege of employment." Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001). A court will not find that the harassment "affected a term[,] condition or privilege of employment" unless it was "'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" Id. (quoting Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir.1999)). According to the district court, Snoddy did not meet either the third or the fourth prong of the Celestine test.

In challenging this conclusion, Snoddy asserts that the district court overlooked the record evidence that supported his claim. For example, he points to his sworn statement that: "Negative comments were included in my performance evaluations as a result of my race and my reporting racial prejudice within the Police Department." The district court was not required to credit this conclusory allegation of discrimination, however. See Auguster v. Vermillion Parish Sch. Bd., 249 F.3d 400, 403 & n.3 (5th Cir. 2001).

Snoddy also highlights the fact that the City was unable to identify a single white employee who received a reprimand, as Snoddy did, for arriving two minutes late to roll call. This argument rests on a fundamental misunderstanding of the burden of proof. While Snoddy could have created an inference that the reprimand was racially motivated by showing that similarly situated white employees were treated differently, see, e.g., Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995), the City was not required to demonstrate that a white employee committed an identical violation, and received an identical reprimand, in its motion for summary judgment.

Furthermore, Snoddy's contention that the district court ignored evidence, which tended to demonstrate that he was unjustly disciplined by the City for conducting off-duty work in a criminal trial without department approval, is similarly unavailing. In its motion for summary judgment, the City proffered evidence that Snoddy had requested, and had been denied, permission to conduct this type of off-duty work. In addition, the City proffered evidence of its investigation into this incident, which demonstrated that the department based its disciplinary action on testimony from witnesses who attended the trial and overheard Snoddy bragging about his work on the trial and the amount of money he was being paid. In response, Snoddy simply argues that, had the City conducted a more thorough investigation, it would have discovered that he attended the

trial as an observer, not as an employee of the defense team. Yet, Snoddy has proffered neither circumstantial nor direct evidence that the City's disciplinary decision was influenced by his race. Thus, the district court correctly held that Snoddy's disciplinary sanction was not an act of racial harassment. Cf. id. at 1090-92 (holding that an employee could not demonstrate race discrimination merely by showing that his employer's reason for suspending him was "wrong," because the employer's decision was made in good faith and the employee did not also show that similarly situated white employees were treated differently).

Snoddy's final complaint about the district court's resolution of his harassment claim centers on the City's decision to remove his training duties. Snoddy argues that the City's reliance on multiple, inconsistent reasons for withdrawing his participation in the FTO program is itself probative of pretext. Yet, even if we assume that the evidence in the record supports an inference that the officials who removed Snoddy's duties were motivated by his race, Snoddy has not demonstrated that this one action was so "sufficiently severe or pervasive" that he was subject to an "abusive working environment." Thus, the district court correctly concluded that the City was entitled to judgment as a matter of law on Snoddy's racial harassment claim.

*4. Constructive Discharge*

Finally, Snoddy contends that he presented sufficient evidence to survive the City's motion for summary judgment on his

constructive-discharge claim. We agree with the district court, however, that because no reasonable jury could find that Snoddy was subjected to a hostile work environment based on the evidence in the summary-judgment record, a reasonable jury also could not find that he was constructively discharged. See Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim.").

## III. CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.